J-S67028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARK B. HASSENPLUG | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| TERESA G. HASSENPLUG, N/K/A TERESA ANN GORDON | |
| Appellee | No. 619 EDA 2016 |

Appeal from the Order dated January 26, 2016
In the Court of Common Pleas of Chester County
Civil Division at No. 2009-14172

BEFORE: FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS, P.J.E.*

MEMORANDUM BY RANSOM, J.:                    **FILED OCTOBER 26, 2016**

Mark B. Hassenplug ("Husband") appeals from the January 26, 2016 order granting the petition for special relief filed by Teresa G. Hassenplug ("Wife"), which sought to enforce the parties' marital settlement agreement. After careful consideration, we affirm.

Husband and Wife were married in 1996, and divorced on May 29, 2012. After settlement discussions, their divorce decree incorporated a property settlement agreement ("PSA"), which the "parties, through their counsel, agreed . . . would supplant any form of ancillary relief." Report of the Special Master and Settlement Agreement, 05/29/2012, at 1-2.

On September 9, 2015, Wife filed a petition of enforcement of the obligations under the PSA. Wife alleged that Husband failed to sell marital

*Former Justice specially assigned to the Superior Court.

property. She requested specific relief from the court in enforcing paragraphs 7 and 8 of the PSA and for reasonable attorney fees. ***See*** Petition for Enforcement of Obligations under the PSA, 09/09/2015, at 1-2.

Following a hearing in January 2016, the trial court issued this order:

1. [Husband] shall immediately list the marital residence located at 2 Heatherwood Drive, Malvern, Pennsylvania for sale with [Realtor] at Long and Foster in Devon, Pennsylvania. Immediately means within the next ten (10) days.

2. The property shall be listed in "as is" condition. Any further improvements costing money may only be done after communication between the parties' attorneys and the agreement of both parties.

3. [Husband] will keep the house in excellent condition and make the house readily available for any showings or anything else the realtor needs.

4. If [Realtor] does not wish to be the listing agent, counsel for the parties will contact the [c]ourt and a different listing agent shall be chosen.

5. [Husband] will not receive a credit for the approximately $35,000 of home improvements he has testified that he has made to the property.

6. [Husband] will provide to counsel for [Wife] a list of furniture that he thinks needs to be removed from the residence, along with a list of dates that [Wife] may choose from to remove the furniture.

7. The net proceeds from the sale of the house will be divided 60/40 with Wife receiving 60%.

8. The proceeds from the sale of the house will be held by the law office of Gawthrop Greenwood, PC in escrow pending the reconciliation of any credits or adjustments that need to be made.

9. [Husband] is directed to immediately make arrangements for the auction of the 2003 Hummer, and the Indian Chief Motorcycle. The vehicles are to be auctioned within the next thirty (30) days. The proceeds are to be divided 60/40 in Wife's favor. Wife is to receive the funds within 10 days of Husband's receipt of the sale price.

10. [Wife] is directed to obtain the title immediately (and assign it, if necessary to [Husband]) for the Indian Chief Silver Motorcycle and provide that to her counsel, who will in turn provide it to [Husband]. Once [Husband] is in receipt, he will have thirty (30) days to then have that vehicle sold at auction. The proceeds are to be divided 60/40 in Wife's favor. Wife is to receive the funds within ten (10) days of Husband's receipt of the funds.

11. The parties shall contact Alita Rovito and schedule an appointment with her within the next 45 days in order to complete the arbitration process.

12. Counsel fees against [Husband] shall be waived as he has not been given credit for the repairs/refurbishing he has done thus far to the marital residence.[1]

Trial Court Order, 01/26/2016, at 1-3.

Husband filed a notice of appeal to this Court in February 2016. Thereafter, the trial court ordered Husband to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b), which he did in March 2016. The trial court filed a responsive opinion. **See** Trial Ct. Op., 04/04/2016.

On appeal, Husband raises the following issues.

1. Did trial court err in changing the terms of the Property Settlement Agreement and providing that the property shall be listed in "as is" condition, ignoring the terms of the parties [*sic*] previously negotiated agreement?[2]

2. Did the trial court err in addressing the issue of credits for home improvements as the issue was not plead by either party and was raised by [Wife]'s counsel without regard to

_____

[1] In addition, the trial court equitably ordered Wife to pay $700.00 in counsel fees to Husband. **See** Trial Court Order, 03/8/2016.

[2] Husband withdrew this challenge to the lower court's decision. **See** Husband's Brief at 12.

[Husband]'s due process rights or the terms of the parties' agreement which provided:

"The proceeds from the sale of the house shall be held by the law firm of Gawthrop Greenwood in escrow pending the reconciliation of any credits or adjustments that need to be made. Once counsel for the parties have determined that reconciliation, the proceeds shall be delivered to the respective counsel for distribution to the parties."

3. Did the trial court err in dismissing [Husband]'s reliance on the realtor's agreed agency as it applied to home improvements. The parties' agreement specifically provides that the parties agree that all communication between the parties related to the house will go through the real estate agent?

4. Did the trial court err in its determination that [Husband] would not receive a credit for approximately $35,000 of home repairs ignoring the testimony provided by the [Husband] and the parties Agent, Judy Harle as provided for by the terms of the parties agreement?

5. Did the trial court err in giving any weight to [Wife]'s counsel fee claim and/or further waiving said counsel fee claim as against the [Husband]'s claim for a credit for the repairs when [Wife] presented no evidence of counsel fees?

Husband's Brief at 6-7.

Before addressing Husband's issues on appeal, we address Wife's motion to quash. *See* Wife's Brief at 10.[3] Wife contends that Husband failed to preserve issues for appeal by failing to file post-trial motions in accordance with Pa.R.Civ.P. 227.1 or failing to make objections in the court below. *See id.* at 12. Wife also contends that Husband filed a defective brief that failed to comply with Pa.R.A.P. 2119. *See id.* at 13. Wife

_____

[3] In May 2016, Wife filed a motion to quash Husband's appeal, which was denied without prejudice to her right to raise the issues presented therein before this panel. *See* Order Denying Motion to Quash, 06/29/2016.

maintains that Husband's failure to cite legal authority or note where his claims were preserved in the record constitutes a waiver. **See id.** at 14.

Regarding Husband's failure to file post-trial motions, Rule 1930.2 provides that "[t]here shall be no motions for post-trial relief in any domestic relations matter." Pa.R.Civ.P. 1930.2(a). Accordingly, Husband was not required to file a post-trial motion.

Regarding deficiencies in Husband's brief, an argument section containing substantial inadequacies is ground for finding waiver of an issue presented on appeal. **See** Pa.R.A.P. 2119(a).

> It is well settled that the argument portion of an appellate brief must be developed with pertinent discussion of the issue, which includes citations to relevant authority. [...] 'When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived.'

**In re S.T.S.,** 76 A.3d 24, 41-42 (Pa. Super. 2013) (citing Pa.R.A.P. 2119(a), quoting **Commonwealth v. B.D.G.**, 959 A.2d 362. 371-372 (Pa. Super. 2008)).

Notably, Husband risks waiver by failing to develop his argument with citations to relevant legal authority. However, dismissal because of a defective brief is an extreme action that we decline to take in this case. **See Stout v. Universal Underwriters Ins. Co.**, 421 A.2d 1047, 1049 (Pa. 1980); **see** R.A.P. 902. Accordingly, Wife's motion to quash is denied.

Husband's brief contains one argument as to issues two through four. Husband contends that the trial court erred or otherwise abused its

discretion by misinterpreting the parties' PSA and by failing to accord proper weight to the testimonies. *See* Husband's Brief at 13.

> In Pennsylvania, we enforce property settlement agreements between husband and wife in accordance with the same rules applying to contract interpretation. A court may construe or interpret a consent decree as it would a contract, but it has neither the power nor the authority to modify or vary the decree unless there has been fraud, accident or mistake. It is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. When the trier of fact has determined the intent of the parties to a contract, an appellate court will defer to that determination if it is supported by the evidence. Further, where as here, the words of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the express language of the agreement itself.

*Bianchi v. Bianchi*, 859 A.2d 511, 515 (Pa. Super. 2004) (internal quotations and citations omitted; formatting modified).

Contract interpretation presents a question of law, for which our standard of review is *de novo*. *See Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa. Super. 2007). Nevertheless, "'we are bound by the trial court's credibility determinations.'" *Kraisinger*, 928 A.2d at 339 (quoting *Stamerro v. Stamerro*, 889 A.2d 1251, 1257-58 (Pa. Super. 2005) (citations omitted)). "'[A]bsent an abuse of discretion, we will not usurp the trial court's fact-finding function.'" *Stamerro*, 889 A.2d at 1257 (quoting *Chen v. Chen*, 840 A.2d 355, 360 (Pa. Super. 2003), *appeal denied*, 775 A.2d 808 (Pa. 2001)).

In this case, the parties' PSA governs the disposition of property rights under the divorce decree. Wife specifically petitioned the court to enforce paragraph 8 of the PSA, which states:

> The marital residence shall be listed with [realtor]. The list price will be set by [realtor] based on a competitive market analysis that she will perform. The parties shall *consider* any recommendations made by the realtor to fix up the property for sale. *If the parties consent to the work and one or both of the parties advance costs for the work*, than that individual or the parties will get reimbursed for the costs for the monies they have laid out off the top of the proceeds. The net proceeds would then be divided 60/40 with Wife receiving 60%. *The parties further agree that both are to be consulted equally* by the realtor for any decision regarding the sale of the house. The parties agree that they shall accept the first offer within ten percent of the recommended list price. Husband shall give access to the realtor for showings and agrees to the use of a lock box. The parties agree that all communication between the parties related to the house will go through the real estate agent. The proceeds from the sale of the house shall be held by the law firm of Gawthrop Greenwood in escrow pending the reconciliation of any credits or adjustments that need to be made. Once counsel for the parties have determined that reconciliation, the proceeds shall be delivered to the respective counsel for distribution to the parties.

Agreement, at 6 ¶ 8 (emphasis added). These terms were intended to govern the matter of advancing costs for work to prepare the marital property for sale. Accordingly, the court properly interpreted the PSA and did not commit an error of law.

Here, the trial court properly determined that both parties' consent to repairs was a condition precedent to reimbursement. Whether Wife gave her consent was a point of contention for the parties during the hearing. Husband maintained that he made extensive repairs. Notes of Testimony

(N.T.), 01/19/2015, at 10-11. Husband knew the PSA required Wife's consent. *Id.* at 12, 44, 57. Wife testified that she needed to agree to repairs before they were made. *Id.* at 91-92. According to Wife, she was not aware of repairs Husband was making. *Id.* at 106. She also maintained that she did not consent to pay for any repairs and was not obligated to pay for them under their agreement. *Id.* at 92.

The trial court found Wife's testimony credible that she did not agree to pay for the work.[4] We defer to this finding, as it is supported by the record. *See Kraisinger*, 928 A.2d at 339. Accordingly, Husband's claim is without merit.

Husband also contends, at issue five, that the court abused its discretion in waiving his counsel fee claim against Wife as consideration for his ineligibility for reimbursement. *See* Husband's Brief at 17. His claim lacks merit.

"Our standard of review of an award of attorneys' fees is well settled: we will not disturb a trial court's determinations absent an abuse of discretion." *Miller v. Miller*, 983 A.2d 736, 743 (Pa. 2009) (citing *Verholek*, 741 A.2d at 795). The lower court awarded Husband counsel fees as a "means to mitigate the overall financial 'hit' to husband." Trial Ct.

---

[4] Because the trial court determined Wife did not consent to the work, Husband was not justified in relying on the realtor's recommendations. *See* Trial Ct. Op. at 4.

Op. at 5.  We conclude that the trial court did not abuse its discretion in fashioning an equitable remedy for Husband's financial benefit.  ***See Miller***, 983 A.2d at 743 (citing 23 Pa.C.S.A. § 3502(e)(7)).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/2016